Mr. Barton, whenever you're ready. Good morning, ladies and gentlemen, it's my privilege and honor to be able to represent the appellate here today, Dr. Will McRaney, seated in the audience very much is a product of New Orleans. He received his doctorate here at New Orleans Baptist Theological Seminary, served as a professor here for many years. He's worked his entire professional life within the umbrella of the Southern Baptist Convention. Now, this case is about whether or not a religious entity can commit acts which is committed by a non-religious entity would result in a tortious lawsuit, and then that religious entity hide behind the ecclesiastical abstention doctrine and said, no, you can't touch us because we're a church. Now, we know that not every civil court decision jeopardizes the First Amendment. In fact, the Constitution is designed to protect the freedom of religion, that's a great thing, but there's been many exceptions involving that. Some even within intra-church fights within the church itself, but there's some, and particularly in this case, where inter-entity fights should be a matter of court concern. Let me explain. The Southern Baptist Convention is unlike most other denominations. Most other denominations have a top-down hierarchical structure where there's always an appellate process up to the head of that denomination, the pope, in the case of the Catholic Church, or some other religious person who oversees the entire denomination. The Southern Baptist is not like that. Each party that's going to be talked about here today is a separate, autonomous, and independent entity. In fact, it's somewhat miraculous, you might say, that 47,000 independent Southern Baptist churches voluntarily come together in an arm's-length transaction to comprise the Southern Baptist Convention. The North American Mission Board is merely a separate entity. It is not a church, as we understand that definition. It is an entity... I'm going to ask you just... This direction of discussion does go into religious structures. It may be a highly unusual one, but it is asking a court to begin to inquire into the religious structure, and then overlay on that very difficult constitutional questions. I have a few threshold questions. Was your client fired, or did he resign? Well, he was... That's a good question. I guess you would say he was fired with a separation agreement. It was a negotiated deal in which he stepped down and resigned as Executive Director of Maryland Baptist Convention, but he would have been fired nonetheless. Is that... What I'm wondering is, are we really facing this very large constitutional crisis in trying to distinguish as to what points of inquiry we can make as to religious structures, or did this man resign, and therefore, there really was no termination? Yes, sir, but you see, when the North American Mission Board, as a separate entity, orchestrated his termination... But I thought in this negotiated departure, he also waived his right to sue them, yes or no? As a supporting organization, and that is a question for another day from this standpoint. Okay. Factually... Is that because the only issue before us is jurisdictional? Is that the only issue before this court today? The only issue before this court is subject matter jurisdiction. Power of courts to adjudicate this? That's correct. Because the district court dismissed this case before any discovery was had. There's no facts. Well, it didn't dismiss the case before discovery. It denied the summary judgment based on two doctrines, ministerial exception and ecclesiastical abstention. Then discovery occurs, correct me if I'm wrong, and your opposing counsel renewed their summary judgment just on jurisdictional grounds. The court orders show cause, and it grants it just on it lacks power. Is that a fair description of the procedural history? It's fair, and I'm loathe to correct the court, and you said correct me if I'm wrong. Yeah. I am wrong. Judge, respond. No, no, no, because that's important because we have very difficult, complex doctrines, and one question I have, and I'll have for opposing counsel is, do we have the ministerial exception before us today at all? No, sir. Okay. So we have... Dr. McCraney never at any time was an employee of a North American... That's asking us to decide that difficult question, whether it is only employer-employee relations governing it. I thought the ministerial exception, the court ruled against it. They tried to appeal it, certificate of appeal is denied. The only issue before us today is, can any court adjudicate this dispute because of the ecclesiastical abstention doctrine? Is that correct? In its narrowest point, that is correct because Dr. McCraney has nowhere else to which he can appeal this decision because there's no hierarchical formation within the... What a lot of circuits have wrestled with this, especially since the Supreme Court's decision resolving the ministerial exception as not jurisdictional. What circuit do you think we should follow in terms of saying that the ecclesiastical abstention doctrine is not jurisdictional? What's the case that shows this district judge was most wrong as a matter of law? I... Uh... Well, I wanted to take it a step further and say that the Yoder case in the United States Supreme Court says that the fundamental qualification for protection based on the First Amendment clause is that you first must establish whether the protection or the act to be protected is in fact religious. There's no facts here on which to make that determination. The district court throughout this case dismissed this case because it might be religious. No, the district court agreed with you exactly on that theory at the outset, denying summary into whether your client was fit as a matter... To be part of the clergy or the ministry or whatever they're called. Judge. Right? Close. Close. Okay. What happened was when discovery started, when discovery started, the North American Mission Board issued a subpoena duca sticum for the personnel files of Dr. McCraney from Maryland, Delaware. The lawyers from Maryland, Delaware filed a motion to quash and raise that issue. The files were never produced. The court revisited that issue and said, oh, well, we can't get into this because it's going to... It's going to make a determination whether or not it's religious polity, religious doctrine, doctrinal differences, et cetera. So no discovery has ever been had on that issue, none. The only facts in this case are my well-pled complaint, which does not raise an issue that would be protected by the Ecclesiastical Extension Doctrine. That's it. Does your complaint tie the defamation and the infliction of emotional injury to his termination? Absolutely. Absolutely, yes. It is a specific, well-pled complaint in which I tracked exactly what had happened. But you see, it wasn't so much when he was terminated from Maryland, Delaware that this problem is about. It's after he was terminated, then the North American Mission Board, by their power and influence, continued to interfere with his business and his ability to make a living within the confines of the Southern Baptist Convention by exercising that power and influence. Making speeches, is that what you're referring to? Making speeches and making presentations and they wouldn't allow him to do that? I'm sorry, repeat that one more time. After he was fired, his complaint was that they wouldn't allow him to make presentations or make speeches or anything. Is the North American Mission Board comprised solely of ministers? Who are those people? It is the president, various administrative officers, and then as I understand it, there are 50 trustees that are appointed from the various churches that comprise the Southern Baptist Convention and these trustees come together to help control the hundreds of millions of dollars available to the North American Mission Board for funding of mission projects in the United States. Are the 50 trustees ministers? Yes, ma'am. And let me say this, to the best of my knowledge, each of them are ministers. They may possibly be serving in some executive directorship at the time, but most of them,  Are these answers in the record or is this just your understanding of how the Baptist world works? The 50 trustees, that would not be in the record. That's something that I know. There are things that I know that are not in the record because the facts have never been developed. For example, I know that the trustees, as we speak right now, are in a conference in Puerto Rico. 50 trustees. This case has a lot of directions it could go in, but all that we have in front of us now is a district judge that has said, because of the ecclesiastical abstention doctrine, I can't adjudicate any of them. That's right. Because what he said in his first decision, he did very much use the word, hold on just a second. I guess I'm back to my same question. You would contend that what circuit would say these claims, all of them, defamation, et cetera, are subject to a secular court's ability to apply neutral principles? What circuit do you point to that say, absolutely, a court's got to adjudicate this tort, otherwise it never gets resolved? Do you hear my question, Counselor? I did. Okay. I'd love the answer. I'm finding Supreme Court cases, Jones v. Wolf, and I'm finding state court cases, Tuber v. Cook. What circuit? That's all right. That's all right. It's eluding me right now. Okay. Go ahead with your argument. It is. There's certainly Mississippi law, the Smith case, which would allow an inquiry into situations like this. But I'm sorry that I've got every jurisdiction that I can think of off the top of my head except a circuit. And I happen to have a little bias for that. Well, we need good Fifth Circuit law. We need good Fifth Circuit law. What the court said in their decision was, considering all the facts available to it, comma, and not just those in the complaint, comma, the court finds that this case would delve into church matters. There are no other facts, period. There's my complaint and a subpoena ducus ticum that was issued for which all these motions were developed. There's a couple of affidavits. So what are the facts you need to prove, the full, complete orbit to prove your defamation claim? I will show, what I will show is that what happened is Dr. McCraney pushed back against NAM when they wanted to change the strategic partnership agreement. They wanted to say, we want to come in to each state and control where the money goes and who's hired and who's fired. And Dr. McCraney said, you're going to dilute our autonomy. You're going to dilute our independence. And I'm not doing it. There's certainly a dispute about church management. So, if the doctrine has expanded from disputes over beliefs and who's a fit clergyman to church finances and management, you'd be in trouble. You're saying it hasn't made that jump? Judge, the North American Mission Board is not a church. They are an entity that controls money. This at its very source is a dispute about power and money. That's what this is about. There's no church doctrine. There's no church policy. He's not denying church doctrine. He's not denying the birth of Christ or the virgin birth or the resurrection. It's none of that. It's about who's going to be in control. And that has nothing to do between separate autonomous entities. You've got the North American Mission Board who bribed, threatened, coerced, intimidated, and bribed the Maryland-Delaware district to fire Dr. McCraney and then gave them a million dollar bonus for doing so. And I can prove that. But he ended up working out a negotiated departure with a waiver of a right to sue. To sue for that tort. But what happened is the North American Mission Board committed additional torts following that. They started picking up the phone and calling Florida and calling Mississippi and threatening and saying, we don't want him speaking. We don't want him doing anything. We're going to blackball him within the Southern Baptist Convention. In one of my paragraphs of complaint, they put a picture of Dr. McCraney on their front office in Alpharetta, Georgia for all to see. All 50 trustees, all their staff, all the visitors, everybody comes in. There is no religious doctrine for them putting off a picture of him up in their office for him to be declared an enemy of the Southern Baptist Convention. Time's out. You've been forceful. It's a good place to stop because you have rebuttal argument. Thank you, Counselor. Thank you, Judge. Ms. Jacobs. May it please the Court. Donna Jacobs for the North American Mission Board of the Southern Baptist Convention. I wanted to first address Mr. Barton's opening remark and the characterization of our defense in this case. I believe he said that the North American Mission Board has taken the position that the courts can't touch us because we're a church. That is not at all the position of the North American Mission Board in this case. The jurisdictional issue here is a relatively narrow one. It's driven by the particular circumstances of Reverend McCraney's claims. Quite honestly, Mr. Barton championed his well-plaid complaint. We're going to talk about the well-plaid complaint, too, because we think on its face it shows that these are essentially ecclesiastical disputes. So the record doesn't allow us to and we shouldn't get into whether the church is a church or whether it was his employer? I don't think it's necessary to get into whether the North American Mission Board was Reverend McCraney's employer because the issue before the court at this point is not the ministerial exception but the more broad ecclesiastical abstention doctrine. Okay.  You preserved, you urged ministerial exception originally, then that back in January or February the court denies that. You tried to appeal it. That was denied. Correct. Then the discovery comes in, show cause order, and all that's before us is the abstention doctrine question? That's correct. That's correct. Purely a jurisdictional. We can't reach the merits and affirmative defense at this point? At this point, no. This is strictly a jurisdictional issue on appeal. I wanted to also comment on ... Let me ask you one other question at the threshold. Your opponent asserts that he was fired, Mr. McCraney was fired because of the withholding of money. In other words, it was a finance-based decision. Whether you agree with that or not, do you believe that if it was a finance-based decision, it could possibly be ... It's outside of the realm of the ecclesiastical abstention? Not under the particular circumstances of this case, Your Honor. I think it's helpful to understand what these two entities are. They were not particularly familiar to me. I'm not a member of the Southern Baptist faith. As Mr. McCraney alleged in his complaint, the North American Mission Board is an agency of the Southern Baptist Convention. The Baptist Convention of Maryland-Delaware, who was Reverend McCraney's direct employer, is one of 42 state conventions that cooperate. That's the word that's used. They cooperate with the Southern Baptist Convention. Each entity has its own board and is self-governing, but all of these groups choose to voluntarily cooperate for a particular reason, and that is for mission strategy and specifically to grow the Southern Baptist Church through church planting, the creation of new churches. The ministry statement for the North American Mission Board is approved by the Southern Baptist Convention, and it clarifies that the North American Mission Board exists for the purpose of working with churches, associations, and state conventions in mobilizing Southern Baptists as a missional force to impact North America with the gospel of Jesus Christ through evangelism and church planting. The Mission Board partners with these churches, associations, and state conventions according to its ministry principles, and those principles include planting healthy, multiplying, evangelistic Southern Baptist Convention churches, assisting in the ministries of evangelism and making disciples, appointing, supporting, and assuring accountability for missionaries, and providing missions education. Okay, so a cooperative partnership, but where does this get you in terms of the jurisdictional question? It demonstrates, Your Honor, that these are, while autonomous within the meaning of the Southern Baptist Convention, entities that are working together for an inherently religious purpose. They exist to grow the Southern Baptist faith and to create new Southern Baptist churches. The Maryland-Delaware Baptist Convention has its own mission statement of purpose, and that statement clarifies that it exists to intentionally assist in the starting and strengthening of congregations so that together we can accomplish the great commission as given to us by our Lord. So while it is technically correct that the North American Mission Board is not a church in that they don't hold services, the North American Mission Board and the Baptist Convention of Maryland-Delaware both are part of and cooperating with the Southern Baptist Convention, and I don't think anyone would argue that Southern Baptist is not a faith, a religion. So you're saying that a cooperative of religious organizations is, for legal purposes, for purposes of your argument, the same as a church? It is, Your Honor. I do not think that the ecclesiastical extension doctrine is so narrow that you must have a church. We have a number of bodies, self-governing and autonomous, yes, but to say that the Southern Baptist is not to say that Southern Baptists don't adhere to common beliefs or affiliate for ... What on the face of his complaint asks any court to resolve beliefs or doctrine? What would you point to as ... I point to the entire basis for the complaint, and that that is Reverend McCraney had a dispute with the North American Mission Board about how mission strategy was going to be done between these two cooperating entities. That's very clear from every count in the complaint. But it would seem like his dispute was over how money should be raised and who gets it. I didn't see anything in the complaint saying that the reason he ended up leaving was because he had a belief difference. I think perhaps the most telling paragraph in the complaint appears on page four. It's actually the second Roman numeral 10 in the complaint. There Reverend McCraney pleads that he viewed the proposed strategic partnership agreement as a weakening of the autonomy of the Baptist Convention of Maryland-Delaware and the relinquishment of all control to the North American Mission Board in the specific area of starting new training and supporting of church planters. Your Honors, that sounds pretty inherently religious to me. And Dr. McCraney had a different view of mission strategy from the direction in which the North American Mission Board was going. In fact, the very ... What's the limiting principle? What if an individual is suing as a whistleblower and they're alleging fraud and embezzlement? No court can look? No, Your Honor. It's not our position at all. Fraud and embezzlement cases are quite different. But what we have here is a religious dispute about the direction of mission strategy between two entities. And you heard me ask him, what's the best case that draws that line? Because in this day and age where suits against churches, I think everyone will be, are vital as to grave wrongs. And yet the Supreme Court has said, you're right, when it's purely, but that's the word they use, purely an issue of doctrine and belief, then courts should stay out. The issue will maybe never be resolved. It may even be a church that doesn't have a tribunal. So the dispute is just ignored by everyone. What's the circuit authority that tells us what's doctrinal, purely doctrinal versus the whole set of disputes that people would think have to be, someone's got to be held accountable for? Your Honor, I would point to the Kedroff U.S. Supreme Court case as it interprets Watson v. Jones. Kedroff quotes this statement from the Watson case, in this country, the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine is conceded to all. The Kedroff court says that radiates the spirit of freedom for religious organizations and independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government, as well as those of faith and doctrine. Okay. And the same sort of insistent question, because circuits have really wrestled with this all over the country for a lot of time, and state highest courts. What's your best circuit or state highest court case, rather than that, we all agree with that endorsement of free exercise in religion. What's your best case that says, no power to adjudicate the dispute because it's managerial, it's the direction of the church, and that has to include beliefs? Your Honor, I don't know that we have cited a highest state court or circuit court that makes that specific finding, but it is important to realize that the inherent nature of this dispute is religious. It's not that someone- But you're saying on the complaint, we just don't have facts to know that. In fact, the very facts that were asked to us ascertain that were refused. So they couldn't have been found out. We just don't know. And then, as sort of the final remark is, what is putting a picture up have to do with religion? Well, I think we do know from the allegations in the complaint itself, and an understanding of the nature of the two entities and their stated mission strategies, we do know what we need to know for the district court to make that determination. The plaintiff's complaint makes clear that all his claims spring from his disagreement with proposed changes in mission strategy by the North American Mission Board. In fact, Reverend McGraney acknowledged in response to the original motion to dismiss that this cause of action had its roots in church policy. Let's say the defamation came as reduced as, I said I would meet with them, and they say I never did. How does that implicate doctrine? Your Honor, it speaks generally to the dispute that was going on with regard to mission strategy and the church planting and evangelism that these two entities were engaged in and, frankly, for which Reverend McGraney, up until his termination, was the public face of that mission strategy. Your correct count, too, alleges that he was liable by statements that he refused to meet with the mission board officials and that that caused him to be terminated. The employment relationship, and specifically Maryland-Delaware's assessment of his continued suitability to direct their ministry, is central to that claim. Both of you cited the Alaska Highest Court Marshall decision. Do you recall that case? Marshall v. Monroe. Would you embrace it, distinguish it? I distinguish it, Your Honor, because the statements at issue there were secular. They did not relate to church issues or the suitability for ministry. What we have here is a clear dispute about the direction of mission strategy and how that was going to be shaped and these entities' rights to choose who was going to be the public face of those beliefs and who was going to shape that mission strategy moving forward. What was the message that was posted with the photo? There was no message posted with the photo, and I'm glad you brought that up. The district court's opinion certainly can be read as saying that there were words on the picture. That is not what is claimed in the complaint. If you read count five, it states that the photo communicates that he's not to be trusted and is public enemy number one. What was the purpose of putting the photo up? If he's public enemy number one or if that was not the intent of it, clearly he's persona non grata at this point, so why would they put a picture of him up when in fact they are reducing or eliminating him from the participation in what the organization's trying to do? How was that communicated? There is nothing in the record that would tell us why it was done, but you've touched on something, Judge Englehart, and that is that these religious organizations do have a right to choose with whom they cooperate and who they don't. As you said, he might have been persona non grata, and perhaps that was the reason, but that is not in the record, but there's nothing intrinsically tortious about displaying a photo, but Reverend McGraney alleges that it communicates all of these things, that the picture communicates that he's not to be trusted and is public enemy number one. The words in that complaint are meanings ascribed by Reverend McGraney to the fact that his photo was at the reception desk, and his thinking that his photo conveyed these messages illustrates his understanding that he was in a real conflict with the mission board. Had it ever been up before at either, was this like a conference, an event, or was this in the office that they occupy where the photo was displayed? I seem to recall that it was at an event. My understanding, Your Honor, is that it was at the North American Mission Board home office in Georgia. Okay. Had it been up for a while before, or did it go up at about the time that this controversy erupted? I don't believe that there is anything in the record about that. The complaint alleges that someone who was visiting the North American Mission Board office saw the picture, took a picture of the picture, and provided it to Reverend McGraney. But it's just, it's ridiculous that you can't identify why it was put up there. What was the indication? Was it under some banner saying former priest we hate or something? I mean, why was it even there? I don't know why you don't know that answer. Well, I do know it, Your Honor, but it is not in the record. And so if we're dealing with just the record, I think we have to look at what Reverend McGraney says about it, and that is that he understood it to be communicating that he was public enemy number one of the North American Mission Board, and that that necessarily arises out of his dispute with them about the new strategic partnership agreement and how and who was going to shape the mission strategy that was shared by the Baptist Convention of Maryland-Delaware, his employer, and the North American Mission Board. Wouldn't this doctrine, which has immense importance but subtlety, require more factual development for us to know if it was beliefs versus defamation public enemy? You know facts that seem highly relevant as to whether it's on the belief side of the equation or the tort, secular, neutral principle side. Well, as the district court noted, even getting into some of those determinations would be violative of the ecclesiastical abstention doctrine. That sounds like absolute immunity. It's not absolute immunity, Your Honor, but it has to do with the subject matter of this dispute, so we're not talking about— What's the case that extends subject matter to, even if we accept your characterization, directions that a financial entity and its partnership will go in? The ecclesiastical abstention doctrine applies to matters of internal church affairs. But I thought the Supreme Court in every case said purely doctrinal, purely. That's not financial. I don't believe it's as limited as purely doctrinal. I do think it expands to disputes, internal disputes, questions of church management. I thought it originated where a church had its own internal tribunals, the tribunal rules on it, it's belief-related, and then the Supreme Court is saying, don't second-guess a church tribunal. But here we don't have a tribunal. No one's adjudicated this. We don't know if it's belief-related. It's early. It may well be. But let me turn that into a question. You know the Supreme Court's Hosanna decision. I do. And that clearly stated that the ministerial exception is not a jurisdictional—correct? That is an affirmative defense. Has any court since that decision said that the ecclesiastical abstention doctrine is jurisdictional? Since that footnote. This court, before Hosanna— I know. I'm asking you after. I'm not aware specifically of one after Hosanna Tabor that specifically says the ecclesiastical abstention doctrine is jurisdictional as opposed to— Was our Simpson decision before or after? It was before. It's from 1974, I believe. Okay. But even there, we affirm summary judgment. We didn't dismiss for lack of jurisdiction. Correct? In other words, when I put all the pieces to the jigsaw puzzle— That is correct. That's correct? Yeah. It doesn't look like this is jurisdictional. Now, it may be just as robust and protective as you're saying, but I'm not sure it's jurisdictional. Courts can't even consider it. My guesswork about facts to determine if it's belief is precisely because the court stopped before looking at all. But if the doctrine isn't jurisdictional, then both doctrines may still be there for you to prevail on, ministerial exception, abstention, but not at this point. It's premature. But I don't think we have to speculate and imagine about the facts because I do think it is clear from the complaint that Reverend McRaney was in a dispute about the direction of mission strategy that his employer and a cooperating entity were engaging in, and those entities determined that because of his disagreement with that mission strategy, he was not the appropriate person to continue to be the public face of that mission strategy. Factually, was he even terminated, which seems to be the predicate for all his claims? My understanding is that there was a vote to terminate him, and then he was offered the option of entering into this separation agreement. He was going to be fined. I wanted to touch on one thing as my time expires. Mr. Barton pointed out the Southern Baptist Convention is unlike other religions because nobody oversees. There's not this hierarchical structure. This case does not present questions of deference to church courts. North American Mission Board is not asserting that an interest church dispute has been decided by a higher church authority, and it certainly does not claim to be that higher authority. But an argument that because the Southern Baptist Convention is congregational and doesn't have church courts means that it's okay for the state to intervene would provide less constitutional protection to congregational religions like the Southern Baptist Convention than it does to hierarchical religions like the Roman Catholic Church. And that would violate the principle of neutrality that the First Amendment mandates neutrality between religion and religion as well as religion and non-religion. Thank you, Counsel. Thank you. Final argument, five minutes. Yes, sir. Counsel, before you start, would you tell us about the photograph, and was there anything, you know, you make the allegation, was there anything written under it or posted, or had the photograph been up before this dispute? Judge, she is correct. In my complaint, I said it only communicated the idea. Okay. There was no words that were associated with it. A friend of Dr. McCraney's did take a picture of it and give it to him. But certainly he was not listed. His photo was not put up there as a hero of the faith. How long had it been up before that? Do we know how long it had been up? We do not know the answer to that. Or was it put up in connection with anything disputed in this case? I have no other facts that go with that other than the photo was placed up there after he was terminated, as far as we know, after he was terminated from Maryland-Delaware. But you're using the word communicated. So what's the basis for you using that word? Judge, practically speaking, if a leading pastor within the Southern Baptist Convention walks up to the offices of the North American Mission Board in Alpharetta, Georgia, and sees the picture of Dr. McCraney on the table in the front desk of the foyer and says, Oh, I know Dr. McCraney. He used to be a professor at New Orleans Seminary, and he used to be over at Maryland Baptist. What's his picture up there for? They're going to tell you because he fought back against us, because he pushed back. Do you have any evidence who they are? They is the North American Mission Board, and specifically Kevin Ezell, who is the president of that board, who is the one who made the phone call, we know for certain, to the director of the conventions in Florida and said, We don't want him speaking at your symposium. And that director pushed back and said, No, we're going to allow Will to speak anyway, which he did, which is why the district judge dismissed that portion of the complaint. And I agree with that. But here's where we are. And thank you for your work and your preparation and, of course, asking questions that I don't know the answer to. The Yoder case did cite favorably to the Second Circuit. And this is what the Second Circuit said in the case of Founding Church of Scientology v. United States. It is clear that a religious organization, merely because it is such, is not shielded by the First Amendment for all liability for fraud. If the statements involved here do not concern the religious beliefs and practices of the religious organization, the free exercise clause provides no defense. When the church acts like the church, then I agree. The First Amendment is set up to protect the churches from intrusion by civil courts and by the government. I agree with that 100 percent. But when the church stops acting like the church and acts like the world and acts like any other corporate entity that is out there threatening, intimidating, coercing, and bribing other individual entities in a tortuous interference to interfere with somebody's ability to make a living in this world, the civil courts need to step in and say, That's not right. That's not what the law allows. And the case, one case that I cited to, it's not a Federal Circuit Court case, but the analogy was made. It said Caesar can well enter into the temple and determine whether the dispute is religious in nature or not without violating the First Amendment. And that's all we're asking for here is the right to go in and start looking into the facts of this case. If it comes back and he was fired because of religious doctrinal differences, we lose. But that's not what this case is about. It's about power and control by one entity over another. And now it's by a major entity. You want to add a biblical scenario to it? Goliath versus David, a small individual who's fighting back, who pushed back. And the North American Mission Board. Yes, sir. Hosanna case you're familiar with. You heard my question just at the very end. Do you know of any court, state or federal, that has applied the ecclesiastical abstention doctrine jurisdictionally since the Supreme Court's Hosanna decision? I do not. Okay, keep going. We're just asking for the right. To continue with discovery in this case to prove that it's not a matter of religious doctrine. It is as we say it is. It's a it's a case of power and control by one entity over another that has no religious overtones whatsoever. And we can do that without violating constitutional principles. Thank you.